## SAMUEL PUTNAM *vs.* JOEL BOWKER.

Whether the use of a right of way over land attached to a hotel, by an adjoining landholder, be adverse or permissive, is a question of fact for the jury, under proper instructions from the court as to the nature of adverse possession, and how far the same would exist over land belonging to a public building.

An obstruction of part of a space over all which A. claims a right of way by adverse user, does not defeat A.'s right to pass over the way as reduced in width.

THIS was an action of tort for a nuisance caused by the erection of a fence on land over which the plaintiff claimed a right of way by prescription. At the trial before *Fletcher,* J. the way was alleged to exist between a line four feet east-wardly of, and parallel to, the easterly side of a house standing on the plaintiff's land, (and which stood there anterior to the year 1767,) and the westerly side of a brick building standing on the land of the defendant. The distance between these buildings was nine feet and nine inches. The brick building was erected more than twenty years before the date of the writ. The evidence tended to show that the preliminary excavations for the brick building were made, and the cellar walls built early in the year 1830, and that the building was completed in the year 1831. This brick building, to some extent, occupied the site of an old wooden building, which was erected before 1767, and which, during that year, was the residence of the Hon. William Burnett Browne. The estate, which the plaintiff claimed to hold in fee, was originally conveyed, in 1767, by the aforesaid Browne to one William Lilly, who mortgaged the same back to Browne, and this mortgage, after a series of assignments, having come into the possession of the plaintiff, was relied upon by him,

together with a long and undisturbed possession to support his title.

The remainder of the estate of Mr. Browne, including his mansion-house, in 1781, came into possession of one Jesse Fearson, whose title cannot be explained by any papers now accessible to either party. In 1783, Fearson conveyed the property to William Gray, who held it until 1805, when he sold it to the Union Marine Insurance Company. The description in Fearson's deed to Gray was copied into the deed from Gray to the Union Insurance Company, with a single addition. By this description, the land conveyed was bounded westerly by " the land conveyed by William Burnett Browne to William Lilly." But the actual measurements in each deed would make the westerly line on the westerly side of the four feet strip which lay eastwardly of the house ; or, in other words, would carry the Gray estate to the eastern side of Lilly's (now the plaintiff's) house. The additional clause in the deed to the insurance company was in these words : " Excepting, however, any right to passage way which William Lilly, or his heirs or assigns, may lawfully claim, challenge, or demand in the premises." The insurance company conveyed the premises, in 1824, to William Manning, who, soon after, executed a series of mortgages to the Mercantile bank, into whose possession the property finally came, by foreclosure, in 1840. But the deed from the insurance company to Manning, and the mortgages from Manning to the bank, contained the whole description (including the exception) of the deed from Gray to the insurance company. On the first day of March, 1844, the Mercantile bank conveyed the premises by a warranty deed to Joel Bowker, the defendant. In this deed, the western boundary of the estate was fixed at the easterly side of the plaintiff's house, and the four feet strip was said to be subject to a right of way for the benefit of both parties.

The mansion-house of Mr. Browne, was afterwards occupied by Mr. Gray as his mansion, from the time when he purchased the estate, until the year 1800, when it was opened as the " Sun Tavern." From that time till the year 1825, with one short interval of two months, it was in constant use

as an inn and general stage-house. On the westerly side of
this tavern house was a porch about four feet wide, which was
also there while the house was occupied by Mr. Gray. On
the easterly side of the plaintiff's house, was a porch eight
inches wide. It appeared by the deposition of a witness, that
in 1798, at which time she resided in the plaintiff's house, and
from that time till 1807, the space between the two houses
was wholly open, and that vehicles containing wood, hay
carts, and other large teams, as well as horses and foot passen-
gers, used to pass through this open space to the yard back of
the plaintiff's house. After the occupancy of the building as
a tavern commenced, and until its demolition, this space was
an open tavern yard, used by those who went to the tavern,
and all others who pleased,—the plaintiff and his tenants
among others; and it appeared that from 1798, at least, a
wide gate swinging outwards, opened from the yard of the
plaintiff into this alleged passage way. The use of this gate
was finally prevented during the latter part of the time that
the building was used as a tavern, by the filling up of the
road in front of it, at which neither the plaintiff nor any one
claiming under him made any objection. In 1825, the Sun
Tavern was torn down, and the lot was left open and un-
fenced, until preparation was made in 1830 for the erection
of the brick building. The brick building, in question, ex-
tended westwardly four feet beyond the western side of the
old porch of the Sun Tavern. The obstruction complained
of was put up by Mr. Bowker in 1844, and inclosed all the
space west of the brick building, except the four feet strip.
Two deeds were produced from the plaintiff, one conveying
an undivided half of this property to one Newhall, and the
other a partition deed with one Potter, a grantee of Newhall,
each of which contained a description of the property, but
neither of which contained any allusion to such a right of
way as that claimed. Under these facts, the counsel for the
defendant requested the court to rule: 1. That the use of the
space between the Sun Tavern porch and the Lilly house, so
long as the former was occupied as a tavern house was per-
missive, and that the character of this use was not a question

of fact to be determined by the jury, but a conclusive presumption of law, to be enforced by the court. 2. That the erection of a portion of the brick building in 1831, over a part of what had been originally claimed as a way for teams, and large vehicles, was an interruption of such a right of way as the plaintiff attempted to establish by adverse possession, and that this interruption was confirmed in favor of the defendant, by twenty years' continuance on his part; consequently the plaintiff could not establish his way as claimed in his declaration, unless he showed twenty years' adverse possession of the same since 1831, and that this was a question of law and not of fact.

But the court declined so to instruct the jury, but submitted the case to the jury with instructions to which no exception was taken, if the refusal to give the instructions prayed for was correct. The jury having found a verdict for the plaintiff, the defendant moved for a new trial on the ground, and on that ground only, that the court erred in not giving the instructions prayed for as above.

*S. H. Phillips,* for the defendant.

*G. Wheatland,* for the plaintiff.

By THE COURT. The only question before us is whether the precise instructions asked for should have been given. The first was objectionable in asking for an abstract ruling, that the use of the way by the plaintiff had been a permissive use, thus seeking to take the case entirely from the consideration of the jury, instead of submitting the case to them under proper instructions as to the nature of adverse possession, and how far the same would exist when the use was that of a passage way over land attached to a public building, or one used for public purposes. The presiding judge submitted the case to the jury, but under instructions to which no exceptions are taken, if any other instructions than those asked for could be properly given. It must, therefore, be assumed that the principles of law applicable to the use of a passage-way over land attached to a meeting-house or academy, as they had been held by this court in the case of *Kilburn* v. *Adams,* 7 Met. 39, and what would be required to constitute adverse posses-

46*

sion, were fully stated in the charge to the jury. The cases are not entirely alike. The use of a passage through the yard of a tavern to the lot of an adjoining owner may present a different case from that of the use of public grounds, attached to an academy building. The cases differ however in a more material point, as the adverse use in the case at bar, as was alleged on the part of the defendant, commenced before there was any tavern or tavern yard. The case was one for the jury, under proper instructions, and not to be decided by the court as a permissive occupation by a conclusive presumption of law.

The further prayer for instructions that the erection of a building in 1831, obstructing a part of the way that had been used by the plaintiff, would defeat the entire right of way, although a way of reduced width remained, and that therefore the plaintiff must show a new right of way acquired since 1831, and that this was a question of law and not of fact, was also properly refused.     *Judgment on the verdict*